## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **SHARA GUINN**, individually and on behalf of all similarly situated individuals,<br><br>        Plaintiffs,<br><br>                        *v.*<br><br>**ALLURA USA LLC, PLYCEM USA LLC D/B/A ALLURA, PLYCEM USA, INC., ELEMENTIA USA, INC., ELEMENTIA, S.A. DE C.V.,**<br><br>        Defendants. | Case No.  1:18-cv-858<br><br>DISTRICT JUDGE |

## COMPLAINT

Plaintiff Shara Guinn, on behalf of herself and others similarly situated ("Class Members"), now brings the following complaint.

## NATURE OF ACTION

1.      This is a consumer class action against Defendants Allura USA LLC, Plycem USA LLC d/b/a Allura, Plycem USA, Inc., Elementia USA, Inc. and Elementia, S.A. de C.V. (hereinafter referred to as "Defendants") on behalf of all persons and entities who own homes, residences or other structures physically located in Ohio, on which Defendants' fiber cement exterior siding is or was installed.

2.      Defendants' Fiber Cement Siding is referred to as "the Siding" in this complaint.

3.      As discussed herein, the Siding on Plaintiff's and Class Members' homes suffers from an inherent defect resulting in the Siding cracking, chipping, flaking, peeling or splitting. Homes eventually suffer water and moisture intrusion as a result.

4.      If it were properly manufactured and installed on homes, the Siding would meet all applicable standards for weather resistance and perform adequately.

5.      However, as a result of the defect in the Siding, Plaintiff and Class Members have incurred and will incur thousands of dollars in damages to replace the Siding.

## THE PARTIES

6.      Plaintiff Shara Guinn is a citizen and resident of Warren County, Ohio.

7.      Defendant Allura USA LLC is a subsidiary of Plycem USA LLC, and Plycem USA, Inc. Allura USA LLC has a principal place of business in Texas, and at all times relevant herein, Allura USA LLC transacted and conducted business in Ohio.

8.      Specifically, Allura USA LLC manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds and potentially thousands of Class Members in Ohio.

9.      Defendant Plycem USA LLC d/b/a Allura was and is a Delaware corporation, with a principal place of business in Texas, and all times relevant herein, Plycem USA LLC d/b/a Allura transacted and conducted business in Ohio.

10.      Plycem USA LLC d/b/a Allura manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds if not thousands of Class Members in Ohio.

11.      Defendant Plycem USA Inc. was and is a Georgia corporation, with a principal place of business in Texas. At all times relevant herein, Plycem USA Inc. transacted and conducted business in Ohio.

12.      Plycem USA Inc. manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members

in Ohio.

13.     Defendant Elementia USA, Inc. is a Delaware corporation, with a principal place of business in Texas. At all times relevant herein, Elementia USA, Inc. transacted and conducted business in Ohio.

14.     Elementia USA, Inc. manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Ohio.

15.     Defendant Elementia, S.A. de C.V. was and is a corporation organized and existing under the laws of another country. At all times relevant herein, Elementia, S.A. de C.V. conducts and is engaged in business in the State of Ohio.

16.     Elementia, S.A. de C.V. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Ohio.

17.     At all times relevant herein, Elementia, S.A. de C.V., Elementia USA, Inc., Plycem USA LLC, Plycem USA Inc., and Allura USA LLC jointly transacted and conducted business in Ohio.

18.     The Defendants are the agents and/or alter egos of each other, and the corporate interests of these Defendants were amalgamated so that they in effect operated as one and the same entity.

19.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the fiber cement siding at issue.

20.     At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the design, development, manufacture, marketing, and sales of the fiber cement

siding at issue.

## JURISIDICTION AND VENUE

21.     This Court has personal jurisdiction over the parties and has jurisdiction over the subject matter of this action.

22.     Jurisdiction in this Court lies under 28 U.S.C. § 1332(a) (the general diversity statute), because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties.

23.     Jurisdiction also lies under § 1332(d)(2) ("CAFA"), because, as to the proposed class, the amount in controversy exceeds $5,000,000, and the citizenship of the proposed class of Ohio homeowners is at least minimally diverse from the Defendants.

24.     Venue lies in this Court under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

25.     Defendants hold themselves out to the construction industry and the public at large as being providers of superior, quality, and durable products, including the Siding that is the subject of this litigation.

26.     At all times relevant herein, Defendants were engaged in the design, manufacturing, marketing, sale, supply and delivery of the fiber cement siding in the State of Ohio.

27.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed the Siding.

28.     Upon information and belief, in making the Siding, Defendants used fly ash as in ingredient, instead of the more common grain and silica used by other manufacturers of fiber cement siding.

29.     Fly ash is a by-product of coal burning power plants and costs less than cement, so its use by Defendants lowered the cost of making the Siding.

30.     However, Defendant's decision to use fly ash resulted in water absorption, porosity problems, and other uniform defects alleged herein—none of which are inherent in the better grain and silica sand design formulations.

31.     Upon information and belief, Defendants learned that the addition of fly ash into its Siding caused water absorption and porosity problems.

32.     When this defective Siding goes through repeated freeze-thaw cycles, it experiences increased expansion and contraction as a result of excess moisture in the product.

33.     Excessive expansion and contraction of the Siding leads to the uniform defects which are alleged herein.

34.     Defendants market and warrant the Siding as durable, and as offering long-lasting protection for a specified life of 50 years.

35.     Defendants also represent to the public that their Siding will last for 50 years without problems, or, if it does not last 50 years, then Defendants would remedy the situation.

36.     At all times material hereto, Defendants marketed and represented the Siding by claiming:

> a.     "Combining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding."
>
> b.     "Unlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects. They are also suitable in both hot and cold climates and are fire resistant. What's more, Allura products feature realistic wood grain and textures, come in an incredible array of colors and are paintable for unlimited design possibilities."

      c.     "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates • Non-combustible, Class A fire rating • Superior aesthetics • Factory Pre-Primed • Distinctive, more realistic textures • 50-year Limited Warranty • Best ROI for homeowners* for 8 years in a row."

      d.     "It won't rot, warp or splinter and is designed to significantly outperform wood in every way."

37.     Plaintiff's builder or subcontractor, as well as Class Members' builders and subcontractors, relied on Defendants' representations and warranties in purchasing the Siding.

38.     As discussed herein, the Siding has not lived up to Defendants' representations, given the early and severe deterioration, and given that the Siding requires unexpected maintenance, premature repair, and replacement.

39.     The Siding prematurely fails, causing damage to the underlying structures and other property of Plaintiff and members of the Class and lowers the value of the property.

40.     All of Defendants' Siding is uniformly defective such that Plaintiff and Class members' Siding fails before the time periods advertised, marketed, and guaranteed by Defendants or otherwise expected by ordinary consumers purchasing siding.

41.     Specifically, Plaintiff's and Class Members' Siding is cracking, splitting, warping as well as falling off Plaintiffs' and Class Member's homes.

42.     The defects present in the Siding are so severe that Plaintiff and Class Members must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased the Siding.

43.     As a result of the defects and failures alleged herein, Plaintiff and the Class have suffered actual damages.

44.     The water intrusion and above-described damages resulting from the Siding constitutes "occurrences" resulting in "property damage" to property other than Defendants'

"product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

45.     The above-described defects are due to fundamental design, engineering and manufacturing errors, which are within Defendants' expertise.

46.     Because the Siding cracks, prematurely degrades, otherwise fails and permits water intrusion, it violates the building codes and industry standards.

47.     The above-described deficiencies exist at the time the Siding leaves the factory.

48.     Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

49.     The Siding on Plaintiff's and Class Members' homes has and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by Defendants, and the time warranted by Defendants. This will cost each homeowner thousands of dollars to repair the damage associated with the Siding, and to prevent such damage from continuing into their homes and to prevent water intrusion into their home due to defects in the siding.

50.     Defendants knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely due to moisture invasion or other defects.

51.     From experience with other defective siding issues, Plaintiff can aver that the outward manifestation of Siding deterioration and deformation is cracking, warping, discoloration, and product shrinkage. At the extreme, the Siding will break and fall off the house.

52.     In short, the Siding does not perform in accordance with the reasonable expectations of consumers and is not a suitable building product to be installed on houses or

buildings.

53.     Upon information and belief, Defendants have received thousands of complaints alleging a defect in their Siding.

54.     Upon information and belief, some of these claims have been improperly rejected and other of claims have been settled in a manner not strictly consistent with Defendants' warranty.

55.     Despite receiving a litany of complaints from consumers, such as Plaintiff and other members of the Class, Defendants have refused to convey effective notice to consumers about the defects, and refused to fully repair damage caused by the premature failure of their product.

56.     Defendants' response to customers' claims has been woefully inadequate under the circumstances. Defendants are seeking to limits homeowners' recovery to replacement costs of individual boards of Siding piece by piece. Defendants do not pay the full cost of labor to replace failed Siding.

57.     Defendants' uniform representations to Plaintiff and the Class that the Siding defects did not represent a design or manufacturing defect or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiff and the Class.

58.     Such representations serve to conceal the true nature of Defendants' defective Siding.

59.     At all relevant times, Defendants had a duty to disclose to Plaintiff and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding

was not suitable for use as an exterior building material.

60.     Because the defects in Siding are latent and not detectable at the time of purchase until manifestation, Plaintiff and the Class members were not reasonably able to discover their Siding was defective, despite the exercise of due diligence.

61.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against Defendants on their own.

62.     This is especially true in light of the size and resources of Defendants, and a class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

63.     Plaintiff seeks to recover, for herself and for the Class, the costs of repairing the damage to her property and replacing her Siding, and injunctive relief requiring Defendants to replace their defective Siding to uniformly provide relief in accordance with its obligations under the law.

**PLAINTIFF'S EXPERIENCE WITH THE DEFECTIVE SIDING**

64.     In 2006, Plaintiff purchased a new home from Cristo Homes, Inc., which installed the Siding.

65.     After noticing that the Siding was failing, Plaintiffs contacted Cristo Homes.

66.     Cristo Homes eventually identified the Siding as Allura's Maxitile fiber cement siding. Cristo Homes purchased the Siding from Carter Lumber, and produced invoices that purportedly show this.

67.     Plaintiff now experiences significant problems with the Siding, which are

worsening.

68.     The Siding started to warp and pull away from the house itself. It looks like this:



69.     Cracks between the Siding appeared and worsened as time passed.

70.     The paint is starting to come off the Siding.

71.    There are cracks in the Siding around the windows of the house, letting water intrude, causing damage inside the house. It looks like this:



72.    Plaintiff has discussed the issue with homeowners in her neighborhood, whose houses were built with the same Siding. Her neighbors are having the same problems, and she sees their houses falling apart as well.

### ESTOPPEL FROM THE STATUTE OF LIMITATIONS
### OR STATUTE OF REPOSE

73.    Defendants knew or reasonably should have known the Siding was defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs, Class members and the general public, while continually marketing the Siding as dependable.

74.    Defendants' acts of concealment include failing to disclose that the Siding was

defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage to the very structures they were purchased to protect.

75.     Plaintiffs did not discover that the Siding suffers from an inherent defect until recently.

76.     Regardless, all conditions precedent to the prosecution of this action have been satisfied including, without limitation, that this action was filed within two years from the date the defect or damage became apparent to Plaintiff and within ten years of the house's substantial completion in 2016.

77.     Accordingly, Defendants are estopped from asserting the statute of limitations or statute of repose as bars to this action.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

78.     Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class Members' claims.

79.     By virtue of Defendants' acts, the Siding installed in Plaintiffs' and Class Members' residences has not lived up to Defendants' warranties and representations, and given the defective condition of the Siding and the premature deterioration the Siding that requires unexpected maintenance, wear and/or replacement, the Siding has not proven to be of the value bargained for and/or of that compared to other siding.

80.     Defendants knew or should have known that their Siding was defective in design and/or manufacture, and said Siding was not fit for their ordinary and intended use, was not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

81. Accordingly, any warranty provided by Defendants fails of its essential purpose because its purports to warrant that the Siding will be free from defects for a prescribed period of time when in fact said Siding falls far short of the applicable warranty period.

82. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

83. As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

84. Defendants' shipping of the Siding with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and therefore void *ab initio.*

## CLASS ACTION ALLEGATIONS

85. Plaintiffs bring this class action on behalf of herself and a Class defined as follows:

> **All persons and entities who own structures within the State of Ohio on which Defendants' Siding is installed.**

> But is also defined to exclude:

> (a) any Judge or Magistrate Judge presiding over this action and members of their families;

> (b) Defendants and any employee of Defendants;

> (c) any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants' and its legal representatives, assigns, and successors; and

> (d) any person who has released Defendants or is currently in litigation with Defendants related to Defendants' Siding..

Plaintiff proposes that the Class be divided into subclasses if necessary to align class interests. No such subclass is apparent at this time.

86. Plaintiff seeks class certification under Fed. R. Civ. P. 23(b)(3) and (c)(4).

87. Plaintiff and can demonstrate that common questions of law and fact predominate

over questions affecting only individual class members. R. 23(b)(3). Those questions include:

(a) Whether the Siding is defective;

(b) Whether the Siding is subject to cracking and is not suitable for use as an exterior siding product for the duration of time advertised, marketed, and warranted;

(c) Whether the Siding will continue to crack and degrade over time;

(d) Whether Defendants were negligent in their design and manufacture of the Siding;

(e) Whether Defendants knew or should have known about the defective condition of the Siding;

(f) Whether Defendants concealed and/or failed to disclose the defective condition of the Siding to consumers;

(g) Whether Defendants breached their express or implied warranties;

(h) Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants;

(i) Whether Defendants' conduct, acts and omissions constitute a breach of contract, violation of the building code, negligence, negligence *per se*, negligent misrepresentations and/or violation of the Ohio Consumer Sales Practices Act;

(j) Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers;

(k) Whether Defendants' conduct in marketing and selling its Siding involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive; and

(l) Whether Plaintiffs and the Class are entitled to compensatory damages and the amount of damages for the removal and replacement of the defective Siding.

88. Plaintiff can show that the class action is a superior device for resolving these

claims. R. 23(b)(3). It is superior because individual joinder of all members of the Class is impracticable.

89.     If individual Class Members were required to bring separate actions, this Court and Courts throughout Ohio would be confronted with a multiplicity of lawsuits burdening the court system, while also creating the risk of inconsistent rulings and contradictory judgments.

90.     Moreover, Plaintiff envisions no unusual difficulty in the management of this action as a class action.

91.     Absent a class action, the vast majority of Class Members likely would not be in a position to litigate their claims individually and would have no effective remedy to vindicate their claims.

92.     Plaintiff can also meet the requirements of Fed. R. Civ. P. 23(a).

93.     *Numerosity*, 23(a)(1): Members of the Class are so numerous that their individual joinder is impracticable. While the precise number is unknown at this time, upon information and belief, the proposed Class is comprised of a least hundreds of members dispersed throughout the state of Ohio, the joinder of whom in one action is impractical.

94.     Upon information and belief, the Class is ascertainable and identifiable from Defendants' records, builders' records, and through looking at the Siding.

95.     *Commonality*, 23(a)(2)*:* The critical question of law and fact common to the Class that will materially advance the litigation is whether the Siding is inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations, and omissions.

96.     Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members

of the Class include the following:

97.     *Typicality*, 23(a)(3)*:* Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Siding and Defendants' conduct in concealing the defects in the Siding to owners, contractors, developers, and suppliers. There is nothing unusual or atypical about the way the Siding is failing on Plaintiff's house.

98.     *Adequate Representation*, 23(a)(4)*:* Plaintiff will fairly and adequately protect the interests of the Class members. She has no interests antagonistic to those of the proposed Class.

99.     Further, Plaintiff has retained counsel experienced in the prosecution of complex class actions and construction defect cases. Plaintiff's counsel is adequately capitalized to handle litigation of this size.

### CONSTRUCTION

100.    This Complaint should be construed so as to incorporate the factual allegations above into the relevant counts below.

### COUNT 1:
### Breach of Implied Warranties

101.    At all times mentioned herein, Defendants manufactured or supplied the Siding, and prior to the time the Siding was purchased by Plaintiff's and Class Members' contractors or one of its entities or subcontractors, Defendants impliedly warranted to the builders, subcontractors, Plaintiff, Class Members, and the general public that the Siding was of merchantable quality and fit for the use for which it was intended.

102.    However, as described herein, the Siding was unfit for its intended use and it was not of merchantable quality, as warranted, in that it had propensities to break down and fail to perform and protect when put to its normal intended use.

103.    The Siding caused Plaintiff and Class members to sustain damages as herein alleged.

104.    The Siding was similarly unfit for its particular purpose to be used on Plaintiff's and Class Members' homes.

105.    Defendants failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

106.    In addition, any attempts to waive or disclaim these warranties were not conspicuous and were otherwise unenforceable.

107.    As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

**COUNT 2:**
**Negligent Misrepresentation**

108.    Defendants, through their marketing. materials, website, brochures, product literature, warranties and agents, made representations to the Plaintiff and Class Members, builders, suppliers and the public about the superior quality and durability of their Siding and components.

109.    Defendants transmitted said representations to the Plaintiff and Class Members, builders, suppliers and the public while failing to disclose the defective condition of their Siding, including the substantial leakage and consequential damages that would or could likely result from their Siding' defects.

110.    Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiff and Class

Members, builders, suppliers and the public.

111.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiff and Class Members, builders, suppliers and the public relied on these representations and non-disclosures.

112.    The Plaintiff and Class Members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

## COUNT 3:
## Negligence

113.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

114.    Defendants breached their duty to Plaintiff and the Class by designing, manufacturing, advertising and selling a product that is defective and will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to take other appropriate remedial action.

115.    Defendants knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as warranted and represented by Defendants.

116.    As a direct and proximate cause of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that the Siding was purchased by an agent of Plaintiffs or the Class Members and installed on Plaintiffs' and Class Members' homes.

117.    Upon information and belief, the defect in the Siding causes damage to Plaintiff's and Class members' existing homes in addition to damage to the siding itself, by allowing moisture to enter through the Siding.

118.    These failures have caused and will continue to cause Plaintiff and the Class

Members to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

**COUNT 4:**
**Violation of Unfair Trade Practices and Consumer Protection Laws**

119.    The Ohio Consumer Sales Practices Act, O.R.C. ch. 1345 *et seq.*, makes deceptive or unfair methods of trade and competition illegal.

120.    By selling the Siding throughout the State of Ohio and making representations regarding its product, Defendants have affected commerce and trade within the State.

121.    Defendants engaged in unfair or deceptive acts or practices in violation of law when, in selling and advertising the Siding, Defendants failed to give Plaintiffs and members of the Class adequate warnings and notices regarding the defects in the Siding.

122.    Defendants' acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

123.    Defendants knew or should have known that its Siding was defective, would fail prematurely, was not suitable for use as an exterior Siding product, and otherwise was not as warranted and represented by Defendants.

124.    Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and other members of the Class to be deceived about the suitability of the Siding for use as a long-lasting exterior borne building product that would be backed by warranties of up to 50 years, and those warranties would in fact be honored by Defendants.

125.    Defendants intended that Plaintiff, Class members and or their agents and subcontractors and contractors would rely on their misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the suitability, durability, and useful life of its defective

19

Siding.

126.    The facts concealed or not disclosed by Defendants are material facts in that Plaintiffs and any reasonable consumer would have considered those facts important in deciding whether to purchase the Siding or purchase homes or structures constructed with the Siding.

127.    Had Plaintiffs and the Class known the Siding was defective and would fail prematurely they would not have purchased the Siding or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk, or simply avoided the risk altogether by purchasing different siding.

128.    Defendants have violated, among other provisions of the CSPA, O.R.C. 1345.02(A), subsection (B)(1) (that their product has "performance characteristics, accessories, uses, or benefits that it does not have"), subsection (B)(2) (that their product is of a certain grade, which it isn't), and subsection (B)(10) (regarding warranties).

WHEREFORE, Plaintiffs pray that this Court will certify a class and for judgment against Defendants, for:

1.   For an order certifying the Class, appointing Plaintiff as representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class;

2.   Declare that Defendants are financially responsible for notifying all Class members of the problems with the Siding;

3.   Enter an award of attorneys' fees and costs, as allowed by statute and law;

4.   Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

5.   Enter an award for compensatory damages sustained by Plaintiffs and Class;

6.   Enter an order for equitable and/or injunctive relief;

7.   Enter and order for payment of costs of suit herein incurred;

8.   Enter an award of treble damages for its unfair and deceptive trade practices as provided under Ohio law; and

9.   Grant such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

Respectfully submitted,

 /s/ William F. Cash III
William F. Cash III (Ohio Bar No. 84482)
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street Suite 600
Pensacola, Florida 32502
Phone: 850-435-7059
bcash@levinlaw.com
*Attorneys for Plaintiffs*