**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **SHARA GUINN**, individually and on behalf of all similarly situated individuals**,** | )<br>) Case No.:  1:18-cv-858-SJD-SKB<br>)<br>) Judge Susan J. Dlott |
| Plaintiffs, | ) |
| | ) |
| -v- | ) |
| | ) **DEFENDANTS' MOTION TO** |
| **ALLURA USA LLC; PLYCEM USA LLC D/B/A ALLURA; PLYCEM USA, INC.; ELEMENTIA USA, INC.; ELEMENTIA S.A. DE C.V.,** | ) **COMPEL ARBITRATION, OR IN THE**<br>) **ALTERNATIVE, TO DISMISS**<br>)<br>)<br>) |
| Defendants. | )<br>) |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Plycem USA LLC, Elementia USA, Inc., and Elementia S.A.B. de C.V. respectfully submit this Motion to Compel Arbitration, or in the Alternative, to Dismiss all claims brought against them in Plaintiff Shara Guinn's Complaint.  As set forth in the accompanying Memorandum in Support, Plaintiff has failed to pursue arbitration despite a compulsory arbitration provision.

Respectfully submitted,

_/s/ James E. Burke_
James E. Burke (OH: 32731)
Amanda B. Stubblefield (OH: 97696)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
astubblefield@kmklaw.com

_Attorneys for Defendants_

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  <u>INTRODUCTION</u>

Defendants Plycem USA LLC, Elementia USA, Inc., and Elementia S.A.B. de C.V. (collectively, the "Defendants") respectfully move to compel arbitration or in the alternative to dismiss this action in favor of arbitration.  The claims at issue arise from the installation of Maxitile fiber cement siding (the "Siding") on the home of Plaintiff Shara Guinn (the "Plaintiff") by Cristo Homes, from whom Plaintiff purchased the home.  Any claim relating to performance of the Siding is governed by a 50-Year Transferrable Limited Product Warranty (the "Limited Warranty").  The Limited Warranty contains a broad arbitration provision (the "Arbitration Provision") requiring that any claims related to the Siding be resolved through binding arbitration.  The Arbitration Provision is enforceable under federal law.  *See* 9 U.S.C. § 2.

Defendants[1] respectfully request that the Court enforce the Arbitration Provision and order the Plaintiff to pursue her claims through arbitration.[2]

## II.  <u>RELEVANT FACTS AND PROCEDURAL HISTORY</u>

Plaintiff contracted with Cristo Homes to purchase a newly-constructed home.  *See* (Doc. #1 at ¶ 64).[3]  The Complaint alleges that "Defendants" warrant the Siding as durable "for a specified life of 50 years," *see id.* at ¶ 34, and that Cristo Homes "relied on Defendants' representations and warranties in purchasing the Siding."  *Id.* at ¶ 37.  Plaintiff also alleges that

---

[1]  The Complaint also lists two additional defendants:  Allura USA LLC and Plycem USA, Inc.  Neither defendant exists as an independent corporate entity.  Allura is merely a trade name of Plycem USA LLC.  Plycem USA, Inc. merged into Plycem USA LLC and no longer maintains any independent corporate existence.  Accordingly, these non-existent entities are not properly named and should be stricken from the caption.  Additionally, the caption misnames Elementia S.A.B. de C.V. as Elementia S.A. de C.V.

[2]  Elementia S.A.B. de C.V. has separately moved to dismiss all claims against it on jurisdictional grounds.  In bringing this motion, Elementia S.A.B. de C.V. expressly reserves its right to challenge this Court's jurisdiction over it, and believes the Court should only decide the merits of this motion with respect to Elementia S.A.B. de C.V if it first denies Elementia S.A.B. de C.V.'s simultaneously filed Motion to Dismiss under Fed. R. Civ. P. 12(b)(2).

[3]  The Complaint alleges that Plaintiff purchased her new home in "2006," but this appears to be a typo, as publicly available property records indicate that the sale to Plaintiff became final in 2016.  *See* http://www.co.warren.oh.us/property_search/summary.aspx?account_nbr=551624.

Cristo Homes was her "agent" in purchasing the Siding and having it installed on her home.  *See id.* at ¶ 116.

As an original purchaser of a new home cladded with the Siding, Plaintiff is afforded coverage under the Limited Warranty,[4] which offers homeowners relief in the event that the Siding manifests a manufacturing defect during the 50-year period following installation.  *See generally* (Ex. 1 (the "Maxitile Limited Warranty"), Doc. # 9-1, PageID # 49-51; Ex. 2 (the "Allura Limited Warranty"), Doc # 9-2, PageID # 53-56; Ex. C, Declaration of Shawn Herrington ("Herrington Dec.") at ¶ 8 (authenticating the Maxitile Limited Warranty and the Allura Limited Warranty, Doc # 9-5, PageID # 65).

In addition to affording homeowners relief in the event the Siding manifests a manufacturing defect, the Limited Warranty also includes the Arbitration Provision, which requires that any and all claims relating to the Siding be commenced in arbitration.  Section 10 of the Limited Warranty provides, in boldface type:

> **By use and/or application of the Product, it is . . . agreed that any and all controversies, disputes, or claims pertaining in any manner whatsoever to the purchase of [the Siding] shall be resolved exclusively by binding Arbitration administered by the American Arbitration Association, and judgment on the arbitration award rendered by the Arbitrator(s) may be entered in a court having competent jurisdiction.**

(Ex. 1, Maxitile Limited Warranty at § 10, Doc. # 9-1, PageID # 51; Ex. 2, Allura Limited Warranty at § 10, Doc. # 9-2, PageID # 55-56)  The Arbitration Provision goes on to describe its breadth:  "**This agreement to arbitrate is intended to and shall be broadly interpreted and**

---

[4]     Plaintiff alleges that the Siding is "Allura's Maxitile" Siding.  Allura and Maxitile are different brands of siding.  Defendant Elementia S.A.B. de C.V. is the indirect corporate parent of the entities that sold both brands of siding.  Both brands of siding are covered under Limited Warranties, which are substantively identical for purposes of this motion.  *See* (Ex. C, Herrington Dec. ¶¶ 6-8, Doc. # 9-5, PageID # 65; Ex. 1, Maxitile Limited Warranty, Doc. # 9-1, PageID # 49-51; Ex. 2, Allura Limited Warranty, Doc. # 2, PageID # 53-56).  Accordingly, regardless of whether Plaintiff's siding is covered by the Allura Limited Warranty or the Maxitile Limited Warranty, Plaintiff is required to arbitrate her claims.

covers all controversies, disputes, and claims arising out of or relating to a Product purchase including, but not limited to contract claims, tort claims and statutory claims, or any combination of claims." *Id.* The Arbitration Provision identifies the applicable rules as the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures and, as applicable, the American Arbitration Association's Consumer Related Disputes Supplementary Procedures. *Id.* The Limited Warranty ends with guidance on the arbitral process, including that any arbitration award is "**final and binding**[.]" *See id.* (emphasis in original). Section 9 of the Limited Warranty contains a choice-of-law provision that the document "is to and shall be construed under the laws of the State of Texas, without giving effect to the conflict of law principles thereof." (*Id.* at § 9.)

Plaintiff commenced this putative class action case in this Court on December 4, 2018, asserting four counts against Defendants: I) Breach of Implied Warranties; II) Negligent Misrepresentation; III) Negligence; and IV) Violation of Ohio's Unfair Trade Practices and Consumer Protection Laws. Plaintiff sent Defendants a waiver of service request on December 12, 2018, which the Defendants signed, giving them until February 11, 2019 to respond to the Complaint. *See* (Docs. # 3-5). The parties then agreed to a brief extension, which the Court approved, giving Defendants until February 22, 2019, to respond to the Complaint. *See* (Doc. #7). Defendants now file this Motion to Compel Arbitration or in the alternative dismiss Plaintiff's Complaint.

### III. LEGAL STANDARD

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, "manifests 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary,' and 'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Champness v. J.D. Byrider Sys., LLC*, No. 1:14-cv-730-SJD, 2015 WL

247924, at *3 (S.D. Ohio Jan. 20, 2015) (Dlott, J.) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  When a court is asked to compel arbitration under the FAA, it must determine whether a party "has failed or refused to comply with an arbitration agreement."  *See Love v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 1:12-cv-168, 2012 WL 1698159, at *2 (S.D. Ohio May 15, 2012) (Dlott, J.) (internal citation omitted).

Courts in the Sixth Circuit must answer four questions when deciding whether to enforce an arbitration agreement.  *See Champness*, 2015 WL 247924, at *3.  As this Court has set forth, it:

> first, must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  An arbitration provision's enforceability "is determined in accordance with state law."  *Champness*, 2015 WL 247924, at *3.

Once it has been established that the arbitration clause applies, the Court should dismiss the action where the language of the arbitration agreement "dictates the arbitrator's decision is final and binding."  *Id.*  In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party."  *Id.* (internal citation omitted).  That said, federal courts still acknowledge the general presumption favoring arbitration.  *See id.* (citing *Moses H. Cone*, 460 U.S. at 24-25).[5]

---

[5]     To the extent this is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) , that rule authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  A motion to dismiss to enforce an arbitration provision is properly brought and reviewed under Rule 12(b)(6).  *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) (citing *Teamsters Local Union 450 v. United Parcel Serv., Inc.*, 748 F.3d 281,

## IV.    ARGUMENT

### A.    The Arbitrator Should Decide The Arbitrability Of This Dispute.

At the outset, the Court must decide *who* decides whether this dispute is arbitrable, the arbitrator or the Court. Under the FAA, "the question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions' of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

The intent to delegate questions of arbitrability can arise from the incorporation of particular arbitration rules that require an arbitrator to decide whether a dispute is subject to arbitration. *See Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 942 (E.D. Tenn. 2017). Indeed, courts have repeatedly held that arbitration provisions that incorporate the AAA arbitration rules demonstrate such "clear and unmistakable evidence" that arbitrators should make such gateway decisions about arbitrability. *See, id.*; *see also Howard v. Rent-A-Center, Inc.*, No. 1:10-CV-103, 2010 WL 3009515, at *3-4 (E.D. Tenn. July 28, 2010) ("[T]he Court concludes the parties in this case clearly and unmistakable delegated arbitrability by referencing the rules of the AAA, JAMS, and NAF in their agreement."). This is because Rule 7 of the AAA's Commercial Arbitration Rules provides the arbitrator with "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or *validity of the arbitration agreement* or to the arbitrability of any claim or counterclaim." AAA, Commercial Arbitration Rules and Mediation Procedures ¶ R-7(a) (2016) (emphasis added).

---

286 (6th Cir. 2014) ("[A] party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party 'has failed to state a claim'" under Rule 12(b)(6)).

Although the Sixth Circuit has not yet addressed whether the incorporation of the AAA rules manifests clear and unmistakable intent to delegate issues of arbitrability, district courts in this Circuit have noted that "all of the circuit courts of appeals to have considered this issue have held that it does." *Howard*, 2010 WL 3009515, at *4 (citing *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 769 (E.D. Mich. 2010) (reviewing cases); *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344-45 (2d Cir. 2010) (citing *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)); *Fallo v. High-Tech Institute*, 559 F.3d 874, 877-78 (8th Cir. 2009) (citing *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312-13 (8th Cir. 1994)); *Terminix Int'l Co., L.P. v. Palmer Ranch L.P.*, 432 F.3d 1327, 1332-33 (11th Cir. 2005)); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability") (alterations in original)).

Here, the Arbitration Provision provides, in bold type, that "**[t]he American Arbitration Association shall administer the arbitration, and the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures and Consumer Related Disputes Supplementary Procedures, if applicable, shall apply**" to any disputes related to the siding." *See* (Ex. 1, Maxitile Limited Warranty at § 10, Doc. # 9-1, PageID # 51; Ex. 2, Allura Limited Warranty at § 10, Doc. # 9-2, PageID # 55-56). Given that the incorporation of the AAA Commercial Arbitration Rules has been universally held to manifest the requisite "clear and unmistakable" intent to delegate issues of arbitrability to the arbitrator, Defendants respectfully request that this Court dismiss this action and permit an arbitrator to decide any challenges to the enforceability of the arbitration provision.

**B.**     <u>**The Court Should Enforce The Arbitration Provision.**</u>

Alternatively, and in the event the Court finds that the parties did not delegate the issue of arbitrability, the Court should still compel arbitration or, in the alternative, dismiss the Complaint. The Court should do so because: 1) The Arbitration Provision in the Limited Warranty is valid and enforceable as a written agreement that explicitly applies to the parties and this dispute; 2) Plaintiff is estopped from avoiding the Arbitration Provision because she has claimed benefits provided by the Limited Warranty; and 3) Plaintiff is bound by the Arbitration Provision because her admitted agent (Cristo Homes) purchased the Siding governed by the Limited Warranty and "relied on Defendants' representations and warranties in purchasing the Siding." (Doc. #1 at ¶ 37).

        *1.*     *Although Texas Law Applies To The Enforceability Of The Arbitration Provision, That Provision Is Also Equally Enforceable Under Ohio Law.*

If the Court chooses to decide whether the Arbitration Provision is enforceable, the Court must first determine which state's laws apply to this dispute. The choice-of-law rules of the forum state determine which state's laws should be applied. *See Carey v. Uber Techs., Inc.*, 1:16-cv-1058, 2017 WL 1133936, at *4 (N.D. Ohio Mar. 27, 2017). Per Ohio's choice-of-law rules, "the governing law specified in a contract is applied unless the chosen state lacks a substantial relationship to the parties or the transaction or unless the application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest in the transaction." *Id.* (internal citation and quotation marks omitted); *see also McKinney v. Microsoft Corp.*, No. 1:10-cv-354, 2011 WL 13228141, at *5 (S.D. Ohio May 12, 2011) (applying the choice-of-law provision in a Limited Warranty to various causes of action regarding alleged manufacturing defects in a gaming system).

Here, the Limited Warranty includes a choice-of law provision stating that the Limited Warranty shall be governed by Texas law. *See* (Ex. 1, Maxitile Limited Warranty at § 9, Doc. # 9-1, PageID # 51; Ex. 2, Allura Limited Warranty at § 9, Doc. # 9-2, PageID # 55). Because Defendants Plycem USA LLC and Elementia USA, Inc. are based in Texas, that state has a substantial relationship to the parties and the transaction. *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015) (concluding that a party's citizenship in a particular state provides a reasonable basis for choosing the law of that state). Further, applying Texas law to the Limited Warranty would not be contrary to Ohio law because, as explained further below, the laws of both states favor the use of arbitration to help parties resolve their disputes.

That said, some courts applying Ohio law have reasoned that, in at least some cases, it is proper to determine the enforceability of an arbitration provision before considering a choice-of-law provision if the choice-of-law provision is not incorporated directly into the arbitration clause. *See Banks v. Jennings*, 920 N.E.2d 432, 435 (Ohio Ct. App. 2009) ("Forum-selection and choice-of-law clauses reflect agreement on which public court and which public law will resolve disputes that arise under the contract . . . . Arbitration, conversely, reflects an agreement to resolve disputes in a private, extra-judicial way."). Plaintiff is bound by the Arbitration Provision under the laws of either Ohio or Texas for the reasons explained below.

### 2. *The Court Should Find That The Parties Agreed To Arbitrate Any Disputes Related To The Siding Because Of The Clear, Written Terms Of Their Agreement.*

The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract law regarding arbitrability also applies to limited warranties commonly used in the home-building process. *See Stratman v. NVR, Inc.*, No. 1:08-cv-00041-SAS, 2008 WL 11351364, at *1 (S.D. Ohio Apr. 10, 2008) ("The Court finds Defendant's motion

well-taken that the dispute here is governed by the warranty, and that Plaintiffs must seek to arbitrate their claim per the procedures indicated therein.").

Courts applying both Ohio and Texas law favor arbitration as a dispute-resolution mechanism. *See, e.g.*, *Conte v. Blossom Homes L.L.C.*, 63 N.E.3d 1245, 1250 (Ohio Ct. App. 2016) ("The public policy of Ohio favors enforcement of arbitration provisions"); *Love v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 1:12-cv-168, 2012 WL 1698159, at *3 ("There is a general presumption in favor of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (internal citation and quotation marks omitted)); *21st Mortg. Corp. & Oak Creek Homes, LP v. Moore*, No. 11-17-00167-CV, 2019 WL 150953, at *4 (Tex. App. Jan. 10, 2019) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability" (internal citation omitted)); *North River Ins. Co. v. Transamerica Occidental Life Ins. Co.*, No. Civ.A. 3:99-CV-0682-L, 2002 WL 1315786, at *5 (N.D. Tex. June 12, 2002) ("A court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.").

This presumption in favor of arbitration exists even where the arbitration agreement in question is written, but not signed. *See, e.g.*, *Ladymon v. Lewis*, No. 05-16-00776-CV, 2017 WL 3097652, at *4 (Tex. App. July 21, 2017) (reversing a trial court order that denied arbitration where "the absence of a party's signature on an otherwise valid contract does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of the contract."); *Garcia v. Wayne Homes*, 2002-Ohio-1884,

at ¶ 38 (Ohio Ct. App. Apr. 19, 2002) ("Courts have consistently held that to enforce an arbitration clause it is only necessary that the provision be in writing and a party's agreement to the provision need not be evidenced by the signature of the party to be charged.").

Ohio and Texas law mesh with the decision of another court in this Circuit faced with a substantially similar fact pattern, involving a plaintiff who wished to avoid the binding arbitration provision in the warranty for shingles installed on its building. In *Overlook Terraces Ltd. v. Tamko Bldg. Prods*, the court reasoned that the owner/plaintiff was bound by the arbitration provision because it qualified as the building's "owner" as defined by the applicable limited warranty. *See* No. 3:14-CV-00241-CRS, 2015 WL 9906298, at *4 (W.D. Ky. May 21, 2015). As the court there explained, "the limited warranty agreement applies between [the manufacturer] and the 'owner,' which the agreement defines to be 'the owners of the building at the time the shingles were installed.'" *Id.*

Thus, even though the owner of the building in the *Overlook Terraces* shingles case never directly contracted for the product used in construction, it was still bound by the arbitration provision because the applicable limited warranty's protections and obligations extended by definition to the building's owner. *See id.* In this case, the Limited Warranty's protections extend to Plaintiff because she is "the first subsequent owner of the property on which the Product is installed." (Ex. 1, Maxitile Limited Warranty at § 1, Doc. # 9-1, PageID # 49; Ex. 2, Allura Limited Warranty at § Warranty Coverage, Doc. # 9-2, PageID # 53).

Accordingly, there is a written agreement requiring that the parties here settled their dispute through arbitration. Plaintiff has failed to comply with the Arbitration Provision. Given that any doubts about the provision's enforceability must be resolved in favor of arbitration (*see, e.g.*, *Love v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 1:12CV168, 2012 WL 1698159, at

\*3; *21st Mortg. Corp. & Oak Creek Homes, LP v. Moore*, No. 11-17-00167-CV, 2019 WL 150953, at \*4 (Tex. App. Jan. 10, 2019).  Defendants respectfully ask that this Court enforce that agreement, and direct Plaintiff to submit her claims to the appropriate arbitral forum.

### 3. *Plaintiff Is Still Bound By The Arbitration Provision Even Though She Did Not Sign It.*

Plaintiff is likely to argue that she is not bound by the explicit, written terms of the Arbitration Provision because she did not sign the Limited Warranty.  But the Limited Warranty is still a valid contractual document.  Ohio and Texas courts have applied several additional theories through which a non-signatory can be bound to an arbitration provision.  *See, e.g.*, *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, 596 F. Supp. 2d 1090, 1096 (S.D. Ohio 2009) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003)) ("[A] nonsignatory may be bound to an arbitration agreement under ordinary contract and agency principles"); *North River Ins. Co. v. Transamerica Occidental Life Ins. Co.*, No. Civ.A. 399-CV-0682-L, 2002  WL 1315786, at \*5 (N.D. Tex. June 12, 2002) ("Courts have recognized a number of theories arising out of common-law contract and agency law to bind non-signatories to the arbitration agreements of others."). Courts have recognized at least five ways an arbitration provision can be enforced against a non-signatory:  "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter-ego, and (5) estoppel."  *Mac Tools v. Diaz*, 2:11-cv-940, 2012 WL 1409395, at \*4 (S.D. Ohio Apr. 23, 2012); *see also North River Ins. Co.*, 2002  WL 1315786, at \*5 (listing the same five theories). Here, the Plaintiff is bound by the Arbitration Provision under principles of both estoppel and agency.

4.  **_Plaintiff Is Estopped From Denying The Limited Warranty's Arbitration Provision As She Is Also Claiming The Benefits Conferred On Her By The Limited Warranty._**

Although Plaintiff did not directly purchase the Siding used on her home, she now attempts to claim benefits conferred on her by the Limited Warranty. To wit, she claims that the Defendants "warrant the Siding as durable, and as offering long-lasting protection for a specified life of 50 years." *See* (Doc. #1 at ¶ 34); *see also id.* at ¶ 37 (alleging that Plaintiff's builder or subcontractor relied on Defendants' warranties in purchasing the Siding); *id.* at ¶ 40 (complaining that the Siding "fails before the time periods" specified in the Limited Warranty); *id.* at ¶ 49 (alleging that the Siding "will continue to fail prematurely compared to the time . . . warranted by Defendants"); *id.* at ¶ 108 (alleging that Defendants used their warranties, among other methods, to make representations to Plaintiff about the durability of the siding). Indeed, Plaintiff even accuses Defendants of breaching obligations to her under "their express warranty"—i.e., the Limited Warranty which governs her Siding. *See id.* at ¶ 84.

Plaintiff, however, cannot claim benefits under the Limited Warranty while simultaneously attempting to avoid her obligations under it. The doctrine of equitable estoppel requires that Plaintiff abide by the Limited Warranty's Arbitration Provision.

In the arbitration context, courts applying Ohio and Texas law have invoked the doctrine of equitable estoppel to prevent a non-signatory from seeking a benefit under an agreement while attempting to avoid that agreement's binding arbitration requirement. *See, e.g.*, *Gerig v. Kahn*, 769 N.E.2d 381, 385-86 (Ohio 2002) ("[W]e hold that a signatory to a contract may enforce an arbitration provision against a nonsignatory seeking a declaration of the signatories' rights and obligations under the contract."); *Javorsky v. Javorsky*, 81 N.E.3d 971, 974 (Ohio Ct. App. 2017) ("This doctrine precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations.") (internal citation and

quotation marks omitted)); *Bailey v. HealthSouth Corp.*, No. 9:15-CV-57, 2017 WL 664445, at *16-17 (E.D. Tex. Jan. 26, 2017) (quoting *In re Weekly Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) ("If the non-signatory consistently and knowingly insists that others treat it as a party to the contract during the life of the contract, the nonparty 'cannot later turn [ ] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.'" (alteration in original)). Courts invoking the doctrine of equitable estoppel sometimes reason that it is fair to bind non-signatories as they are essentially beneficiaries of a written agreement even where they did not themselves execute it. *See, e.g.*, *Javorsky*, 81 N.E.3d at 974 ("Ohio courts have also recognized that a third-party beneficiary, although a nonsignatory to contract, may be bound to an arbitration agreement"); *Rachal v. Reitz*, 403 S.W.3d 840, 846 (Tex. 2013) (noting that the Texas Supreme Court "expressly adopted the federal doctrine of direct benefits estoppel.").

The laws of Ohio and Texas are in accord with the overwhelming weight of federal authority that parties should not be able to avoid arbitration provisions while also seeking to benefit from an agreement. *See, e.g.*, *Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs.*, 523 F. App'x 761, 763 (2d Cir. 2013) (quoting *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999)) ("When a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from 'denying its obligation to arbitrate'"));*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (reasoning that the doctrine of equitable estoppel precludes a party from challenging the enforceability of a contract's arbitration provision when the party has "consistently maintained that other provisions of the same contract should be enforced to benefit him"); *Nat'l Home Ins. Co. v. Bridges*, 142 F. Supp. 3d 425, 433 (D.S.C. 2015) ("Because Respondents brought the underlying state court action against Petitioner under the HBW Warranty,

Respondents may not disregard the arbitration agreement while selectively seeking to enforce some terms in the HBW Warranty."); *Overlook Terraces, Ltd. v. Tamko Building Prods., Inc.*, No. 3:14-CV-00241-CRS, 2015 WL 9906298, at *4 (W.D. Ky. May 21, 2015) ("Overlook cannot both seek to enforce the warranty while at the same time carving out the compulsory arbitration provision"); *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000) ("Plaintiffs seek to have their cake and eat it too; they claim reliance on the Express Warranty to establish a claim for breach of the express warranty and, at the same time, disclaim reliance on that same warranty to avoid arbitration.").

Plaintiff should not be permitted to "have her cake and eat it too." She cannot rely on the Limited Warranty to support her contention that the Siding should remain free of problems for a "specified life of 50 years" only to ignore that same Limited Warranty for some perceived tactical advantage. "To permit [a plaintiff] to do so would not only flout equity, it would do violence . . . to the congressional purpose underlying the Federal Arbitration Act." *Upstate Shredding*, 84 F. Supp. 2d at 364−65 (N.D.N.Y. 2000) (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966)). Such an attempt by a nonsignatory to knowingly accept the benefits of an agreement and avoid that agreement's burdens is the very situation the doctrine of equitable estoppel seeks to prevent. *See, e.g.*, *Javorsky v. Javorsky*, 81 N.E.3d 971, 974 (Ohio Ct. App. 2017). Accordingly, this Court should find that Plaintiff is equitably estopped from denying that she is bound by the Arbitration Provision and she must pursue her claims in arbitration.

### 5. *Plaintiff's Acknowledged Agent Purchased The Siding—And Accepted The Arbitration Provision Governing That Siding—For Her Home, Binding Her To The Provision.*

Plaintiff characterizes Cristo Homes as her agent in purchasing the Siding installed on her home. *See* (Doc. # 1 ¶ 116) (claiming Plaintiff suffered damages "in that the Siding was

purchased by an agent").  This admission has legal significance, as Cristo Homes' purchase of the Siding, subject to the Limited Warranty, means that Plaintiff  is also bound to the Limited Warranty's Arbitration Provision.

Courts in Ohio and Texas have enforced arbitration agreements where agents entered into those agreements on behalf of nonsignatories.  *See, e.g.*, *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, 596 F. Supp. 2d 1090, 1097 (S.D. Ohio 2009) (finding "ample" evidence that an agent had bound the principal to an arbitration agreement); *Alford v. Arbors at Gallipolis*, 2018-Ohio-4653, at ¶¶ 1-2 (Ohio Ct. App. Nov. 8, 2018) (affirming a trial court order staying a case pending arbitration in a lawsuit between a nursing home and the relatives of a deceased resident where the decedent's daughter signed an agreement containing an arbitration clause when admitting her father); *North River Ins. Co. v. Transamerica Occidental Life Ins. Co.*, No. Civ.A. 399-CV-0682-L, 2002  WL 1315786, at *7 (N.D. Tex. June 12, 2002) ("[T]he court finds that the uncontroverted evidence submitted by Plaintiffs conclusively establishes the existence of a valid agreement to arbitrate.  The evidence further demonstrates that Transamerica is a party to such an agreement by virtue of its agency relationship with the Zimmerman entities.").

Courts in this Circuit, and elsewhere, have applied an agency theory to cases where allegedly defective products were used by homebuilders in new-home construction.  *See, e.g.*, *Overlook Terraces Ltd. v. Tamko Bldg. Prods*, No. 3:14-CV-00241-CRS, 2015 WL 9906298, at *5 (W.D. Ky. May 21, 2015)  ("As for the claim that Tamko failed to give adequate notice of the mandatory arbitration provision, such notice under *Krusch* is imputed to the owner who will be deemed to have constructive knowledge of the agreement through his or her contractor when the owner has authorized said contractor to purchase shingles"); *Hoekman v. Tamko Bldg. Prods.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *6 (E.D. Cal. Aug. 26, 2015) (internal citation

and quotation marks omitted) ("It is also well-settled law in this state that notice given to or possessed by an agent within the scope of his employment and in connection with, and during his agency is notice to the principal"); *Krusch v. TAMKO Bldg. Prods.*, 34 F. Supp. 3d 584, 589-90 (M.D.N.C. 2014) (holding that a building contractor, hired by a homeowner, acted as the owner's agent when purchasing roofing shingles for the owner's home).

Cristo Homes purchased the Siding used on Plaintiff's home, and Plaintiff has alleged that Cristo Homes did so as Plaintiff's agent. As her agent, Cristo Homes bound Plaintiff to the Limited Warranty that governs the Siding, and gave her at least constructive notice of both the Limited Warranty and its Arbitration Provision. For this additional reason, the Court should enforce that Arbitration Provision and let the parties proceed to the appropriate arbitral forum to settle this dispute.

**C.** **The Scope Of The Limited Warranty's Arbitration Clause Covers All Claims Asserted In Ms. Guinn's Complaint.**

Section 10 of the Limited Warranty states, in relevant part: "**This agreement to arbitrate is intended to and shall be broadly interpreted and covers all controversies, disputes, and claims arising out of or relating to a Product purchase including, but not limited to contract claims, tort claims and statutory claims, or any combination of claims.**" *See* (Ex. 1, Maxitile Limited Warranty at § 10, Doc. # 9-1, PageID # 51 (emphasis in original); Ex. 2, Allura Limited Warranty at § 10, Doc. # 9-2, PageID # 55-56 (emphasis in original) As Plaintiff brings claims that sounds in contract, tort, and under Ohio statute,[6] the Arbitration Provision is broad enough to cover all of her claims. *See generally id*.

The Southern District of Ohio has routinely held that similarly written arbitration

---

[6] Because Plaintiff has not asserted any federal statutory claims, the Court need not consider the question of whether such claims are not meant to be arbitrable.

provisions were broad enough to sweep common law and statutory claims within their ambits. *See, e.g.*, *Deck v. Miami Jacobs Bus. College Co.*, 2013 WL 394875, at *7 (S.D. Ohio Jan. 31, 2013) ("Because the [False Claims Act] dispute is a 'dispute arising out of or relating to this enrollment agreement,' it falls within the broad scope of the arbitration clause Plaintiffs signed"); *Love v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 1:12-cv-168, 2012 WL 1698159, at *3 (S.D. Ohio May 15, 2012) ("The plain language of the arbitration clause covers 'any controversies[.]'").  The Arbitration Provision at issue here also states that any arbitration award "**shall be final and binding**" on the parties.  (Ex. 1, Maxitile Limited Warranty at § 10, Doc. # 9-1, PageID # 51 (emphasis in original); Ex. 2, Allura Limited Warranty at § 10, Doc. # 9-2, PageID # 55-56 (emphasis in original)).  Accordingly, it is appropriate for the Court to compel arbitration or, in the alternative, to dismiss this case in its entirety.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay this case and compel Plaintiff to pursue her claims in arbitration or, in the alternative, dismiss this case in its entirety.

Respectfully submitted,

*/s/ James E. Burke*
James E. Burke (OH: 32731)
Amanda B. Stubblefield (OH: 97696)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
astubblefield@kmklaw.com

*Attorneys for Defendants*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon opposing counsel via the Court's electronic filing system this 22nd day of February, 2019.

*/s/ James E. Burke*
James E. Burke